The first case is United States v. CES, numbers 19-1254 and 19-2770. Mr. Sorensen and... Is it Ms. Daniel? No, Your Honor. It's Kim Douglas Daniel. I'm sorry. My fault. I apologize. It's one of the problems with audio. So, Mr. Sorensen and Daniel. Mr. Sorensen? Thank you, Your Honor. May it please the Court, my name is Quinn Sorensen and I represent the juvenile defendant, CES. I'd like to reserve three minutes for rebuttal, if I may. That's absolutely fine. Thank you. A statement may be deemed a true threat under 18-USA v. 875C under the objective component of the analysis, only if it conveys a serious intention to inflict bodily injury on another individual. Statements expressing a mere willingness or capacity to engage in violence, or even an eagerness to do so, are not sufficient. The statement must, in other words, reflect a definite intent or plan to cause physical harm. But in this case, isn't your essential argument that the notice that was given out here is not correct? You contend that our decision in AD doesn't really decide this case because that case was decided on First Amendment grounds. Isn't that really what we're talking about? Well, I think there's two issues to be addressed, and I was reaching the first issue, which is the adjudication itself of the 875C violation. But if you'd like to turn first to the notification issue, I'm perfectly happy to do so. Yes, Your Honor. Yes, absolutely. And I think you're absolutely correct in the respect that this is a very different case than AD was. That case, as you just indicated, Your Honor, recognized that on a case-by-case basis, a court may authorize disclosure that is not expressly authorized under the terms of the Juvenile Delinquency Act. But what that case also said was that there must be an interest, a countervailing interest on the other side. Why is it a statute that tells you you've got to take account of victims' interests, a countervailing interest that has to be taken into account, and which this court, in fact, did take into account here? Well, I think the difference here is that there is a statute, of course, that provides for victims' rights in a very general sense, and that's the Victims' Rights Act, of course. But the question here is not whether there is a statute that provides some possible cognizable interest to a victim in any case. It's whether there is a right to be asserted here, like the right in AD under the First Amendment to disclosure. And in this case, we have the very different situation. Hold on. Let me make sure I understand your position. Your position is, unless there was a statute that said victims have a right to be told that they're under threat, and it was just that explicit, that there is no right that should have been taken, there's no countervailing interest that should have been taken into account here. I think that you... Go ahead. Is that the position you're taking? Is your position that it sounds like what you just said was, yes, there's a statute, and yes, it's important, and yes, it protects victims' rights, but it doesn't say specifically that victims have a right to know they're under threat. Well, I think that's what... Go ahead, sir. You don't have a countervailing interest that the district court should have weighed. Is that the legal position you're asserting? That is part of the legal position I am asserting, and I think that's founded upon AD. AD went to great lengths to explain that there was an actual right asserted in that case, a First Amendment right on behalf of the newspaper publishers to seek the information. I was going to talk about a countervailing interest, not a specified legal right, but an interest that should be weighed by the district court in assessing how to treat the juvenile's interest in privacy. I think it's best read as viewed when speaking of a countervailing interest, what it is speaking of, it's an interest that is founded upon a right. And in that case... Run a hypothetical with me. I know it's not the facts here, but assume that CES had said, I think I'm going to blow that place up tomorrow. I hate those dirty so-and-sos at that church. And I got the equipment. I'm thinking I'm doing it. In fact, I might do it sooner. I don't know, but I got it. I'm going to do it. Is your position that based on the Juvenile Act, if the court had intervened and done something, the court couldn't say to these people, no matter how explicit the threat was, they couldn't say to these people, look, you faced a serious and a significant threat from somebody, and we just need to let you know now? I think I could have two answers on that as to why in that particular circumstance disclosure may be justified, and in fact, under your hypothetical, probably would be, in my view. And first and foremost, perhaps, is that the Victims' Rights Act actually does provide a right of notification in the scenario you're positing. And under Subsection A of that provision, it states that if disclosure is necessary to reasonably protect the victim or the crime victim, then that falls within the Victims' Rights Act. That provides a right. I tried to move past that. I tried to move past that by – maybe I didn't say it expressly, but it's not an emergent situation in the sense that they had to tell them, hey, get out of the building. We're past that. They caught him. They got the kid. So you've got a really explicit, very direct threat that this kid hates them and wants to do them serious damage, but they've got him in custody. Well, I think at that point in time, the need for disclosure wouldn't be there at that stage. If he's in custody, if he's not proposing a threat, it doesn't fall within the Victims' Rights Act, and it doesn't otherwise provide – there's no reason to protect the church itself to actually authorize disclosure. That is, there's no danger to the church under the scenario you're positing. So, yeah, I think disclosure would not be authorized. Now, there's a separate question, though. When release is ordered, if release is to be ordered, including if and when the juvenile is going to turn 21. That may provide another circumstance in which you actually do have to disclose in advance at some point. Now, it may not be right then and there. It may be at a future date, but notification is going to be appropriate again, because then you do have that clear, present danger to the victim, to another individual, to the community, that justifies disclosure not only as a matter of the Victims' Rights Act but, again, there you're getting into circumstances in which you have a compelling interest in the protection of another individual who is subject to a crime that you need to protect. And in that circumstances – oh, go ahead. Okay. I got you. I got your position. So your view is, no matter how specific, no matter how horrifying the threat is, once the person's in custody, the victim who was certainly the target has no right to know anything about it, period. I think there's no statutory right in that circumstance. And I think the fundamental issue there is whether you can find another interest in the sense of, in that particular circumstance, it would be, this person is in danger. That is a danger to the community. That is a danger to the individual. And in that circumstance, you may have a situation in which there is a compelling enough interest to counterweight the privacy interest afforded by the Juvenile Delinquency Act, but only insofar as that danger exists. As I said, if he's in custody, if there's no danger posed, then there's no basis for disclosure. And, again, to get back to this case, that's precisely the case we have here, in which we have a release order from the district court which states quite explicitly, pages 224 to 225 of the appendix, that CES had neither the capability nor the intent to carry out these threats and did not pose a threat to the community or to the church. Mr. Sorensen, if I could ask you about the... Yes, please. I have a few questions to follow up on. One includes the comment made by the court that you just referenced, but I'd like to just follow up on something Judge Jordan was asking you. Is it your position that in AD, we explicitly stated that the interest has to be either embodied in the statute or the Constitution? I didn't see that there. I saw the court talking about the court's balance of interest, and it happened to be that there was a First Amendment interest there, but did the court indicate in AD, or I shall say state in AD, that it was required to have an interest that was either embodied in the statute or a constitutional provision? So that's my first question. Certainly, and I agree with you, Your Honor. That was not said in AD, and perhaps I was a little bit too broad in answering Judge Jordan's questions in the sense that when we're speaking about an interest that is founded upon a statutory right, and that's what the district court reported to do in this case, that is under the victim's rights statute, then you do have to find, to my mind, an affirmative right that is conveyed. And just as you would in the First Amendment, if the First Amendment does not convey a right to access to a particular proceeding, then you don't get to the AD analysis, and I think that's what AD kind of recognizes. That is not to say that there may not be other circumstances in which disclosure may not be authorized. For instance, you had a Ninth Circuit case, U.S. v. Eric D., in which the parents of a brutally murdered teenager came forward and asked to be present at the proceeding. And in that circumstance, they were compelling enough, and that's what the Ninth Circuit spoke of, compelling enough reasons outside and unrelated to a statutory scheme to allow for it. And here, those compelling reasons would be kind of in Judge Jordan's hypothetical. If there was a clear and present danger to the church or if CES posed a danger, then perhaps you get that compelling interest. You don't have that here, and you don't have any statutory constitutional right, and therefore I don't think you have  Okay, my next question to follow up is on, you mentioned during your argument today as well as during your brief that the interest must be, quote, compelling, close quote. I have not seen that anywhere in AD that it has to rise to such a level, but rather it's a balancing of interests. Are you relying on this Ninth Circuit case to superimpose compelling, because I didn't see it in AD? No, Your Honor, but I do think that a compelling interest is in fact necessary, and I think that follows necessarily that this amendment has long been considered a compelling fundamental right. So latching that description onto the findings of AD, the holdings of AD, into what is necessary to outweigh the Juvenile Delinquency Act, I think it does need to be a compelling interest, and I think anything less, if it's just an ordinary interest, then you would have disclosure available in most any case, and that's clearly going against the presumption that the Delinquency Act was intended to create against disclosure. I want to switch for a moment to the Juvenile Delinquency Act, specifically 5038 subsection A6. A6 states that records shall be released in response to inquiries from a victim. Would you agree that a victim could make an inquiry, would only be making an inquiry if they knew about the fact that they were the subject of a crime, or a victim of a crime? Put differently, wouldn't some notice have to be given or knowledge on the part of the victim in order for them to, and in order for the court to meet its obligations under even the Juvenile Act itself with respect to the victims? I'd have two answers to that, Your Honor, and most specifically to your point. No, I don't believe that creates any presumption that a notification requirement is inherent in the statute. I think quite to the contrary, the fact that Congress limited the disclosure authorization to places where there are inquiries from the victim shows that they did not intend for notification to be provided because they wouldn't have said that. And two, that provision... Hold on, Mr. Schwartz. You got a logical problem there that I'm struggling with. I think Judge Schwartz's question is a great one and deserves an answer. How could you possibly make an inquiry if you didn't have some notice? Isn't the fact that the statute says on inquiry you have to provide information presuppose, necessarily suppose that there is some notice because otherwise you'd never have an inquiry. I do not believe so, Your Honor. I think... How could there be an inquiry if you didn't know? You wouldn't have... You wouldn't be able to inquire if they weren't given some kind of notice. You wouldn't, Your Honor, but I think that particular provision is intended to cover situations in which you have a crime of an assault type, of a battery type, where they know of the assailant and in that circumstance because they know of the assailant they're going to want to proceed and actually participate in some form or fashion in the court proceedings. Do you think Congress meant to say a juvenile who's clever enough to hide his crime is in a better posture than a juvenile who's less clever and doesn't hide his crime? The juvenile who hides his crime has more rights, more privacy rights. I think Congress was smart enough to provide for notice of obligations when it wanted to do so and in fact this is a fairly carefully crafted statute and in this particular circumstance it's crafted to deal only and allow disclosure only upon inquiry from the victim not to provide that the court should do anything in advance of it. Certainly not from a statutory express exception and I do think it's meant to cover those particular situations in which the victim knows of the assailant and then in that circumstance Congress expected and intended that the victim necessarily has a greater interest in participating. What's the policy rationale for because you know you were under threat you're better deserving of knowing about the risk you have than if you weren't the direct you didn't look your assailant in the face. Is there a policy rationale there? I do believe there's a policy rationale and I think it goes back to the basis for the Juvenile Delinquency Act in the first instance. There's going to be difficult balances struck when you're thinking about juveniles and how they should be disclosed and how their information concerning their potential offenses should be disclosed and I think in this particular circumstance Congress decided that the interest in protecting confidentiality outweigh the interest in protecting for instance if you want to call it protecting a victim. If there's no danger to the victim in that circumstance then the victim has no direct interest in participating because they haven't been directly and proximately injured. That's such as this. Whereas if you have an assailant assault that occurs go back to that example. So in your view the church wasn't a victim here at all? I think there's a very good argument to be made that the church wasn't a victim. If you look at the Victim Rights Act victim is defined specifically as a person directly and proximately harmed as a result of the offense. I'm not sure if you can say that in this particular circumstance but I do think even if it's considered a victim it is of a different caliber of victim in light of what happened in for example Charleston. If you have let's say Dylann Roof did not do anything but merely made threats online and lived across the street from the church. If he were picked up are you telling us that the people in that church have no right to know that somebody directly across the street is making a threat to them? Well I'm not saying that they definitely have no right to know. It would depend on what the court's finding in that particular case was. Again in that circumstance you have a situation where I don't think you could make the finding that Dylann Roof posed no danger to the community or to the church upon release. Here you have a very different situation in which the district court made exactly that finding and found that he did not see any danger to the asserted victim. Then no I don't believe there's any right. There's certainly no right under the Victim's Rights Act and I don't think there's compelling interest in disclosure. At this point Mr. Sorensen it sounds like you're just arguing with the balancing. You're not saying there's no real interest on the other side. You just don't like the way the court balanced the interest on the other side. One of the questions when we get you back on rebuttal will be what would you have done were you the judge? Before you sit down I just ask Judge Schwartz do you have any further questions before we go to... I do. I just have one question before we hear from Mr. Daniel. Mr. Sorensen you made a reference to a statement made by the district court where it was making a judgment concerning intent etc. of CES. That statement was made in the context of his release pending the final disposition. So here's my question. We are evaluating the exercise of the judge's discretion on making the notification which was in a separate order opinion. When we're reviewing the abuse of discretion or the discretion exercise by a district court judge should we be focusing on the factors that were at play for the decision we're reviewing? Because you're asking us to consider an observation that was made in the context of something different. Thank you. That's a good question and I think it's answered in part if not entirely by the fact that at sentencing the district court expressly renewed, well there was an objection renewed to this notification requirement. The district court expressly readopted the findings that they made earlier, reentered it as part of the supervised release. So actually the earlier notification order has now been placed outside of the probation context and into the supervised release order as kind of a matter of where it is. I think that's when it should be assessed and that was after this particular finding was made. So I think you do consider that. And I think also if you want to go back actually to the time in which the order was originally entered there was still a requirement for the district court to find that an interest existed on the other side but that danger actually existed. And even if the district court did not find that danger it would still be a matter of time. All right, thank you. We'll get you back on rebuttal. Thank you. Mr. Daniel. Yes, good morning, Your Honors. Kim Douglas Daniel, Assistant United States Attorney representing the government in this case. Your Honors, I believe you hit the nail right on the top of the head here on this whole issue. And it boils down to the fact that what Judge Mannion issued here was not a juvenile record disclosure order. It was a victim notification order. The whole point of what the judge did here was to let the leadership of the church know that it was a victim. A victim of a threat by an unspecified individual. But what that notification would allow the leadership of the church to do is make an application to make an inquiry under the Juvenile Act under Section 5308.6 which authorizes the disclosure of disposition of juvenile proceedings to a victim of juvenile crime. One question. Go ahead, Judge Jordan first. Or Judge Schwartz, I don't care. Judge Jordan, go ahead. Well, I was going to, unlike your colleague there, I am kind of interested in your take on the threat itself. Whether this is the kind of a threat that was properly prosecutable. In light of the judge's determination that he had no capacity, no actual intent to carry it out, how do we square that up with the finding that this is a prosecutable threat under Section 875C? I think the law is clear. This circuit has previously held that the government does not bear the requirement of showing an actual intent to commit the threatened harm. The law is clear on what we are obligated to show.  or knowledge that the threat will be perceived by others as a threat and that is the subjective component. The objective component is that a reasonable person would understand the communication to be a threat. Judge Mannion wrote... Does the capacity to carry it out bear at all on the question of whether a threat is credible? Yes. If that is a legitimate inquiry, the capacity to carry it out, and there is a finding that he didn't have the capacity to carry it out, is there a conflict or a tension there that creates some difficulty for the conviction? No. And I would say it doesn't create a problem. It is relevant. Capacity is relevant. Whenever you evaluate somebody's mental state, their intent, what you have to do and what the courts have to do is look at the totality of the circumstances. He explored all the evidence to try to gain some insight into this juvenile's intentions. He didn't have the present capacity, although he had an SKS rifle. He didn't have the bombs. He didn't have the ammunition. But he did have a lot of things that shed light on his intent. And Judge Mannion examined, reviewed all the evidence under the proper standards, the purpose and knowledge standards of the subjective components and the reasonable person requirement under the objective standard and came away absolutely convinced that these were true threats under 875C. Repeated references over roughly a two and a half day time period, five as I've counted them, specific references to that church across the street and that the fact that on a Sunday it would be filled with Christians and that there was a daycare center at the church as well, coupled with his expressions of wanting to throw a Molotov type cocktail onto the church and sabotage their vans and wear a special suit to protect him from his own injury in the event. These were all things that would make any reasonable person believe this person was making a true threat. And coupled with his comments about what happened in Paris in November of 2015 where over 130 people were killed and an Islamic attack, 400 wounded. These are the types of things that this court has even talked about on remand in the Alonis case. Judge Sirica, in his opinion... At what point do you emerge from boy, I really hate those Christians. I'd like to see them blown up. When does a statement like that change from being a disreputable, hateful thing to say to being a true threat that's prosecutable where you can be found guilty beyond a reasonable doubt? That's, I think, the scrutiny that must be applied under the object of standard. Would a reasonable person perceive what that person said to be a threat? In this case... That's why I'm pressing on this a little bit. We didn't have Mr. Sorensen speak to this so much because we kept pushing him on the disclosure piece. Certainly in the briefing it comes across pretty clearly that the defense is making the pitch that he's talking about stuff. Yeah, I'm thinking about it. Are you ready to do something? No, I'm not ready to do anything. But I'm thinking about this stuff. If he's consistently telling people, I'm not ready to do anything. I'm just thinking about it. Doesn't that play into the question of whether or not you've got a true threat? Your Honor, someone begged to differ. That's not exactly what he said. Well, I can quote it to you if you want. He's asked more than once, are you ready to act? And he says, no, I'm not. I'm thinking about it. Your Honor, I reviewed the transcript again this morning to make sure that when the FBI confidential human source got wind of the juvenile statements on the Islamic State chat forum, he made contact with him. And one of the first questions he asked him after he complimented him on something that he posted, he said, are you getting ready to attack soon? That was the precise question. Are you getting ready to attack soon? He wanted to know what this guy was doing and whether he was planning to do anything in the immediate future. And his answer If that question hadn't included the word soon, is that the legal distinction? No, it's the answer that counts. His answer was, no, I'm not. I'm still preparing and gathering equipment. That was the answer. And I think any reasonable person after they saw what this juvenile posted on the Islamic State chat room, the photograph of him wearing the scarf, the photograph of him holding an SKS rifle, the things that he said over this three-day period about death to America, et cetera, and I'm going to go after that church and talking about what happened in Paris. There isn't any person, there isn't any reasonable person that would perceive these comments to be true threats. So the question Zubair asks him, to which he responds, do you have any plans? And he says, I need health plans. I'm willing, I don't have any plans. I need health plans. Does that, that doesn't soften any of that other stuff that you've just mentioned? I don't think so, Judge. Under the totality of the circumstances, everything this man, this juvenile said and did over this 72 hour time period, you can't come away with any other conclusion. Okay, I got you. I got your position. Thanks. Judge Jordan? Oh, Judge Swartz, I'm sorry. Yes, thank you. I wanted to ask you, Mr. Daniel, a very similar question I asked Mr. Sorensen at the end of his presentation, and it has to do with what do we, in any way, should we consider the district court's observations in connection with either the release pending for all disposition or as Mr. Sorensen was saying, comments that were made at the final supervisor release and disposition proceeding where the court made certain comments about this individual's intent. Should that factual finding be considered as we evaluate the exercise of discretion by the court in connection with its notification order? Put differently, in evaluating the exercise of discretion in one context, should we be considering things the judge did in a different context and for different purposes? I think it's fair to be considering what Judge Manion said about his belief as to the defendant's intent to carry out the threat, but it doesn't change the fact, Your Honor, that this church was a victim of threats, but it was unwitting and unknown victim of these threats. And all Judge Manion did by his victim notification order was let the church know that it was a victim. And then, once the church knew that it was a victim, it could make itself available of the procedure under the Juvenile Act, under Section 5038A6, to make inquiry, if it chose to, to find out what happened in the dispositional hearing. That's all that was done here. There was no violation of the defendant's anonymity. What the judge did was fashion in its discretion under this court's ruling in the AD case that it has a balancing of interests to simply let to know in this unusual circumstance where the victim did not know it was a victim, didn't know anything about what happened, and that's normally not the situation. Simply allowing the church a mechanism to find out if it did not know what was going on. And when you look at the balancing of interests, is it your position that that interest need not be tethered to a statute or constitutional provision under AD? Exactly. It doesn't have to be constitutional. It doesn't have to be a First Amendment right. The victim has statutory rights under both the Juvenile Act and under the General Crime Victims Act to know about... My question is, does it need to be tethered to a statutory right? No, it doesn't, Judge. It's a balancing in the court's discretion that the circuit said the district courts have on a case-by-case basis. And that was the core holding of AD, a case-by-case basis balancing of the interests in the case. And I think Judge Mannion accomplished the purposes of both statutes. He fashioned an order, a notification order that did justice to both competing interests here. The dispositional hearing, that's already taken place. Yes. Did you seek to notify the church of the final disposition? No. What happened after we requested the notification order after the adjudication hearing, the judge stated, are the order. And to allow the defense to take an interlocutory appeal. And that was pursued by the defense. And while that was being pursued, the judge continued to stay. So there's been no notification at all to the leadership of the church some, what, 18 months, almost now, later. Still no notification. I have no further questions. Judge Schwartz, Judge Jordan, do you have any further questions? No, thank you very much. No, thanks. All right. Thank you very much, Mr. Daniel. Thank you. Mr. Sorensen? Yes, thank you, Your Honor. And I'll start with the question. Yes, sir. I'll start with the question. I believe I'll try to frame it correctly. I think you essentially asked, if I was the district court judge in this particular circumstance, how would I balance the issues involved by taking first there is a balance on the one side, of course, and I don't mean to say it, but it is, the interest in confidentiality under the Juvenile Act. And then on the other side, I'd have to find a cognizable interest. And I would say cognizable at the least, which I would balance on the other end of the ledger. And in this circumstance, it can take two forms. It can take the form of a constitutional statutory right, or it can take another cognizable interest of the form, like a danger to the particular individual that merits disclosure of some sort. Here, we don't have any of those. We don't have a constitutional right, we don't have a right to reasonable protection. But there are rights that are out there, and it's a very delicate job. I almost think of this like sentencing, under the sentencing revolution, that the judge is in the middle of this, and this judge really made great efforts to try to thread the needle in a way that balanced out on a case-by-case basis the rights and the tugging pulls of these statutes. And in sentencing, we give great deference to judges on sentencing now. Why shouldn't we give great deference to Judge Mannion? I think, and I fully agree that he did his best in this particular circumstance. I do think, though, that as a matter of law, under AAD, for instance, if AAD had found that there was no First Amendment right in that case, I don't think we would have had disclosure and that's because there's not a right and a cognizable interest there. The same standard applies here. There has to be an actual right and a cognizable interest. And if I may, just to speak very briefly on the true threat itself, I heard Mr. Daniel indicate that the reference to no by CES in response to questions will you attack soon, are you planning an attack, is somehow a statement that there is going to be an attack and I'm not aware of any case that supports a negative implication of that sort as supporting a serious expression of a true threat. And that is because in all of the cases you're required to find not only that the person is eager, aspirational, looking, willing to engage in something, but they don't have a clear intention in which not only is he speaking only in aspirational terms, but disclaims any intent to do so with that. He doesn't speak in aspirational terms. If I can get my colleagues to indulge for just a minute, you heard Mr. Douglas, excuse me, Mr.  say a very specific thing, throwing a Molotov cocktail, talks about wanting to blow the church up, and talks about being in the phase of gathering equipment, and then speaks of all those things in the context of horrific terrorist attacks elsewhere. It's true that he, speaking to Zuber, speaks about it a little more softly, but does speaking about it a little more softly with Zuber, I'm thinking about it, take away the immediacy and seriousness of the threat of the sort that he had in his conversation with the undercover informant? Well, I'll say two things. One, I think the language used in that, and that is the language that is used in the record, is telling, and that is want. That's how CES described it to Zuber. I want to throw a Molotov cocktail. I would like to do this and that. That, again, is aspirational. That is not a present intention to cause individual physical harm. That is a desire of some sort, or at least a willingness. Disturbing, as it may be, as the government puts it. It is not a true threat. In his conversation with Ahmed, I'm not sure if there is anything in that that really bespeaks, again, a present intention to cause physical harm. Will you attack? No. I'm preparing and gathering equipment. Preparing and gathering equipment is not a present intention to cause a threat or physical injury. It is thinking about it. He goes on to say, I haven't decided on a target. I've got a whole lot of stuff. I need to choose carefully. But he never says he's actually doing something, planning something, thinking about something. So here, again, what you have at most is what CES would want to do, not what he is going to do. The latter is what constitutes a true threat. All right. Judge Schwartz, anything further? No. Thank you, counsel, and thank you to you both. Okay. I have nothing. Thank you very much. Thank you to both counsel for a very well-presented argument, and we'll take the matter under advisement.